**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DIAMOND D. CLARK-MCQUEEN,

        Plaintiff.

v.

CITY OF CHICAGO, DEPARTMENT OF
PUBLIC HEALTH,

        Defendant.

Case No.  26-cv-4718

**JURY TRIAL DEMANDED**

**COMPLAINT**

NOW COMES Plaintiff, DIAMOND D. CLARK-MCQUEEN, by and through her counsel, Jeffrey Law Office, LLC, and complains of Defendant CITY OF CHICAGO, DEPARTMENT OF PUBLIC HEALTH, and states as follows:

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

**JURISDICTION & VENUE**

1.     This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. Seq. and 28 U.S.C. § 1331.

2.     Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired, employed, and harmed by Defendant in this District.

1

**PARTIES**

3.      Plaintiff, DIAMOND D. CLARK-MCQUEEN ("Plaintiff"), was at all times relevant to this suit a Black adult, residing in Chicago, Illinois. At all times relevant, Plaintiff was employed by Defendant in this District. Plaintiff was hired, employed, and harmed by Defendant in this District.

4.      Defendant CITY OF CHICAGO, DEPARTMENT OF PUBLIC HEALTH ("Defendant"), is duly organized and doing business in Illinois. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, and harmed Plaintiff in this District.  Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.      On or about February 27, 2024, Plaintiff timely filed a Charge of Discrimination alleging race discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2024-02071.

6.      On January 26, 2026, Plaintiff received the EEOC's Notice of Right to Sue on EEOC Charge No. 440-2024-02071.

7.      Therefore, Plaintiff's Complaint was filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

**UNDERLYING FACTS COMMON TO ALL COUNTS**

8.      On or about September 19, 2022, Plaintiff was hired by Defendant. Plaintiff's current position is Public Health Administrator II.

9.      Plaintiff's race is Black.

10. Defendant was apprised of Plaintiff's race.

11. Plaintiff performed her job satisfactorily within legitimate expectations of Defendant.

12. In February 2023, under her previous supervisor Richard Teran, Plaintiff received a strong 6-month evaluation score of 3.06 and was excelling in her role.

13. In March 2023, she filed a grievance seeking a title change, which was tied to her eligibility for promotion. Immediately after filing the grievance, she began to experience retaliation, harassment, bullying, and discrimination. In fact, Project Administrator Alyse Kittner attempted to discourage her from submitting the grievance, and that shortly thereafter communication from management deteriorated, with Alyse Kittner eventually ceasing to communicate with her altogether.

14. Following the March 2023 grievance, Plaintiff was increasingly denied opportunities that would support advancement. Although she continued to perform a high volume of work, working on more projects than any other PHA II, she was not acknowledged or included in publications, despite other similarly situated White employees receiving such recognition for project contributions.

15. Plaintiff requested publication opportunities on several occasions but was consistently denied. At the same time, her role and workload were repeatedly changed without written notice or an updated scope, despite her ongoing requests to management, including Dorothy Foulkes, for clarification. She was also assigned work above her title, including training PHA III and MQA staff, which she raised with her union; the union advised that she should not be required to perform those higher-level duties.

16.     Throughout the spring and summer of 2023, Plaintiff continued to raise concerns to management about inequitable workload distribution, lack of support, and being overwhelmed. Managers explicitly told her they would not assist in redistributing work or helping with her assignments. She was isolated within her team and treated differently than White counterparts. During this period, she was also excluded from meetings and not provided with critical project information, which limited her ability to perform effectively and participate in higher-level work that could support promotion.

17.     On August 22, 2023, Plaintiff attended a meeting with Dorothy Foulkes and Alyse Kittner to discuss workload and capacity. She presented documentation outlining her projects and deadlines to demonstrate that she was operating at a high workload level. However, the meeting became confrontational, and management incorrectly asserted she was only performing 50% of the workload. She continued to express that she was overwhelmed and needed managerial support from individuals knowledgeable about the work, but no meaningful assistance was provided.

18.     In September 2023, Plaintiff was assigned additional tasks under unreasonable conditions, including being directed on September 8, 2023 to complete four technical SOPs by September 13, 2023, while still maintaining her existing workload. These expectations were unrealistic and set Plaintiff up for failure, particularly given that she was not provided adequate information or timely responses when she sought assistance. She was also required to create multiple SOPs with minimal support, further contributing to her inability to meet deadlines.

19.     Following the transition to new management, Plaintiff's working conditions continued to deteriorate; her role continued to change without formal documentation; she was left out of key meetings, and she received inconsistent or incorrect direction from multiple managers.

20.     Ultimately, she received a negative performance evaluation, which was pretext and not based on her actual work performance but instead driven by false statements. The evaluation was used to disqualify her from advancement despite her high workload and contributions, and that the negative assessment followed a pattern of being denied support, given insufficient information, and held to unreasonable expectations.

21.     Further, Plaintiff has applied for multiple positions for which she met the stated qualifications. In several instances, she progressed through the interview process and was placed on pre-qualified candidate lists. However, despite consistently meeting these criteria, Plaintiff has not been selected for any of the positions.

22.     Throughout this period, Plaintiff consistently raised concerns both to management and to her union regarding being required to work above her title, lack of support, excessive workload, and inequitable treatment. These issues, combined with her exclusion from advancement opportunities such as publications and the subsequent negative performance evaluation, reflect a pattern of discrimination, harassment, and unfair treatment that impacted her ability to qualify for promotion.

23.     Because of Plaintiff's race, she was subjected to harassment, disparate treatment and discrimination.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq

24.     Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

25.     Plaintiff, Black, is a member of a protected class.

26.     Plaintiff was qualified to perform her job and satisfactorily performed her duties and responsibilities within Defendant's legitimate expectations.

5

27.     Plaintiff apprised Defendant of her race, Black.

28.     Defendant discriminated against Plaintiff because of her race by refusing to accommodate her desire of a safe and free non-discriminatory work place and for harassing and discriminating against her for the same, creating a hostile work environment, and would not have done so had Plaintiff not been Black and everything else having been the same.

29.     Other White employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

30.     Plaintiff's race was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's race.

31.     Defendant's discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, DIAMOND D. CLARK-MCQUEEN, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

A.     Declare, decree, and adjudge that Defendant violated Title VII;

B.     Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

C.     Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;

D.     Order Defendant to pay the Plaintiff compensatory damages;

E.      Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F.      Award the Plaintiff her reasonable attorney's fees and costs; and

G.      Award such other and further relief as it is just and appropriate, including nominal damages.

Dated: April 24, 2026

                                        /s     *Antonio L. Jeffrey*_____
                                              Attorney for Plaintiff


JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
1301 W. 22nd Street, Suite 308
Oak Brook, Illinois 60523
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com